**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

SECURITIES AND EXCHANGE          :
COMMISSION,                       :
                                 :
        Plaintiff,             :
                                 :        CIVIL ACTION NO.
        v.                     :        1:12-CV-82-RWS
                                 :
EARL C. ARROWOOD and             :
PARKER H. PETIT,                 :
                                 :
        Defendants.            :

## ORDER

This case comes before the Court on Defendant Earl C. Arrowood's

Motion in Limine [41], Defendant Parker H. Petit's Motion in Limine [42],

Defendant Parker H. Petit's Motion for Partial Summary Judgment [43], and

Plaintiff's Motion for Leave to File a Sur-Reply Brief [76].  After reviewing the

record, the Court enters the following Order.

## Background

This case arises out of an alleged insider trading scheme, in which the

Securities and Exchange Commission ("SEC") alleges that Earl C. Arrowood

("Mr. Arrowood") purchased stock in Matria Healthcare, Inc., ("Matria") on

October 25, 2007, and December 27, 2007, on the basis of material, non-public

information provided to him by Parker H. Petit ("Mr. Petit"). The facts are as follows and, except where otherwise indicated, are undisputed.

## I. Defendants Mr. Petit and Mr. Arrowood

Mr. Petit founded Healthdyne in 1970 after developing the first home physiological monitor for infants at risk for Sudden Infant Death Syndrome ("SIDS"), and Healthdyne became a publicly traded company in 1981 [43-2, ¶ 1; 68-1, ¶ 1, admitted]. Eventually, following a series of corporate maneuvers, a division of Healthdyne became Matria Healthcare [43-2, ¶ 2; 68-1, ¶ 2, admitted]. Mr. Petit was the Chairman and Chief Executive Officer ("CEO") of Matria [43-2, ¶ 3; 68-1, ¶ 3, admitted].

In the early 1990's, Mr. Petit met Mr. Arrowood, and they became friends [43-2, ¶ 7; 68-1, ¶ 7, admitted]. Mr. Petit and Mr. Arrowood fly, attend flight training, and vacation together with their wives [43-2, ¶ 8; 68-1, ¶ 8, admitted]. Mr. Arrowood has helped Mr. Petit find and vet jets, and in return, Mr. Arrowood gets to fly them [43-2, ¶ 9; 68-1, ¶ 9, admitted]. Mr. Petit pays for Mr. Arrowood's recurrent flight training and for many of the expenses associated with his planes [43-2, ¶ 10; 68-1, ¶ 10, admitted].

2

In 2004, Mr. Arrowood, who had been employed as a commercial pilot with Delta Airlines since 1972, retired [43-2, ¶¶ 6 and 11; 68-1, ¶¶ 6 and 11, admitted].  That year, Mr. Arrowood asked Mr. Petit to assist him in placing and investing about $210,000 that he had accumulated at Delta in an IRA account [43-2, ¶ 12; 68-1, ¶ 12, admitted].  Mr. Petit, who provided similar investment advice to his mother-in-law and sister-in-law, agreed to help [43-2, ¶ 13; 68-1, ¶ 13, admitted].  Mr. Arrowood provided Mr. Petit trading authority in the IRA account [43-2, ¶ 14; 68-1, ¶ 14, admitted].  From mid-2004 until May 2007, Mr. Petit directed the trading in Mr. Arrowood's IRA account, making approximately sixteen total trades in that three-year period, all but one of which occurred in 2004 or 2005 [43-2, ¶ 15; 68-1, ¶ 15, admitted].  Mr. Petit invested Mr. Arrowood's money in a handful of stocks that Mr. Petit himself owned, including Matria [43-2, ¶ 16; 68-1, ¶ 16, admitted].

## II.  Matria's Merger with Inverness Medical Innovations

Matria held a special meeting of its Board of Directors on September 27, 2007, to discuss whether to consider one or more strategic alternatives for the company [43-2, ¶ 18; 68-1, ¶ 18, admitted].  Those strategic alternatives included: (1) staying the course; (2) recapitalizing; (3) selling to a strategic

3

buyer; (4) selling to a financial sponsor; and (5) pursuing strategic acquisitions [43-2, ¶ 19; 68-1, ¶ 19, admitted].  At that meeting, the Board did the following: (1) voted to explore strategic alternatives; (2) authorized engaging The Maren Group ("Maren"), an investment banking firm, as an initial financial advisor for guidance; (3) authorized potential acquirers to conduct certain due diligence on the company; (4) authorized the company to enter into confidentiality and nondisclosure agreements with interested parties; and (5) authorized the engagement of an additional financial advisor as Matria progressed in the process [43-2, ¶ 20; 68-1, ¶ 20, admitted].  The Board did not decide that the Corporation should be for sale or that a certain proposal would be acceptable at that time [43-2; ¶ 21; 68-1, ¶ 21, admitted].

A total of seventeen potential acquirers were contacted or made contact with Matria between October 2007 and January 2008 [43-2, ¶ 22; 68-1, ¶ 22, admitted].  On December 17, 2007, three parties submitted the first price proposals to Matria in preliminary, non-binding indications of interest [43-2, ¶ 37; 68-1, ¶ 37, admitted].  On December 19, 2007, Matria held a regular meeting of its Board of Directors, where the Board reviewed the three preliminary indications of interest and instructed that the three parties should

4

continue due diligence on a non-exclusive basis [43-2, ¶ 38; 68-1, ¶ 38, admitted].  The Board of Directors had still not determined what a fair price would be from any potential acquirer because the company had not had a valuation done [43-2, ¶ 39; 68-1, ¶ 39, admitted].  At the December 19th Board meeting, the Board was still discussing whether to pursue the merger and set a goal of deciding about what would be best for the company by the second week of January [43-2, ¶ 40; 68-1, ¶ 40, admitted].

On January 9, 2008, Inverness Medical Innovations ("Inverness"), which had been interested in Matria but had dropped out of negotiations in mid-December 2007, submitted a non-binding, preliminary proposal to acquire Matria [43-2, ¶¶ 29, 36, and 48; 68-1, ¶¶ 29, 36, and 48, admitted].  On January 10, 2008, Inverness increased its proposed price to acquire Matria [43-2, ¶ 49; 68-1, ¶ 49, admitted].  On January 11, 2008, Matria's Board reviewed the proposals from Inverness and another remaining party, who still needed to conduct more due diligence [43-2, ¶ 50; 68-1, ¶ 50, admitted].  The Board decided to meet again on January 21, 2008, because all parties needed additional time [Id.].  On January 15, 2008, Matria issued a press release announcing that it was engaged in advanced stages of negotiations related to the

AO 72A
(Rev.8/82)

pursuit of strategic initiatives [43-2, ¶ 51; 68-1, ¶ 51, admitted].  On January 27, 2008, Matria and Inverness executed a merger agreement [43-2, ¶ 53; 68-1, ¶ 53, admitted].

## III.   Mr. Arrowood's October 25th Trade

On October 25, 2007, Mr. Arrowood purchased 8,452 shares of Matria at a cost of $213,113.13 [43-2, ¶ 69; 68-1, ¶ 69, admitted].  The parties disagree about many facts regarding the extent of Mr. Arrowood's contact with Mr. Petit prior to the October 25th trade and about Mr. Arrowood's reasons for purchasing the Matria stock.

## IV.   Plaintiff's Claims

As a result of the foregoing, on January 9, 2012, Plaintiff initiated this litigation by filing a Complaint in this Court, raising a claim against Defendants Mr. Arrowood and Mr. Petit for violation of Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b) and Rule 10b-5, 17 C.F.R. § 240.10b-5 [1].  Defendant Mr. Petit now moves for partial summary judgment on Plaintiff's claim regarding Mr. Arrowood's October 25th trade [43].[1]  The Court sets out the legal standard

---

[1]     The Court notes that Mr. Petit is not moving for summary judgment with respect to a second trade that occurred on December 27, 2007.

AO 72A
(Rev.8/82)

governing motions for summary judgment before considering Defendants'
motion on the merits.

**Discussion**

**I.**     **Summary Judgment Legal Standard**

Federal Rule of Civil Procedure 56 requires that summary judgment be
granted "if the movant shows that there is no genuine dispute as to any material
fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.
56(a).  "The moving party bears 'the initial responsibility of informing the . . .
court of the basis for its motion, and identifying those portions of the pleadings,
depositions, answers to interrogatories, and admissions on file, together with the
affidavits, if any, which it believes demonstrate the absence of a genuine issue
of material fact.'"  Hickson Corp. v. N. Crossarm Co., 357 F.3d 1256, 1259
(11th Cir. 2004) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)
(internal quotations omitted)).  Where the moving party makes such a showing,
the burden shifts to the non-movant, who must go beyond the pleadings and
present affirmative evidence to show that a genuine issue of material fact does
exist.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257  (1986).

7

The applicable substantive law identifies which facts are material. Id. at 248. A fact is not material if a dispute over that fact will not affect the outcome of the suit under the governing law. Id. An issue is genuine when the evidence is such that a reasonable jury could return a verdict for the non-moving party. Id. at 249-50.

Finally, in resolving a motion for summary judgment, the court must view all evidence and draw all reasonable inferences in the light most favorable to the non-moving party. Patton v. Triad Guar. Ins. Corp., 277 F.3d 1294, 1296 (11th Cir. 2002). But, the Court is bound only to draw those inferences which are reasonable. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50 (internal citations omitted); see also Matsushita, 475 U.S. at 586 (once the moving party has met its burden under Rule 56(a), the nonmoving party "must do more than simply show there is some metaphysical doubt as to the material facts").

8

## II.      Plaintiff's Motion to File a Sur-Reply Brief [76]

As an initial matter, Plaintiff moves the Court to consider a sur-reply brief to address documents titled "Reply Briefs" filed by Mr. Arrowood [71 and 75] in support of Mr. Petit's motion for summary judgment [76].  As Plaintiff notes, Mr. Arrowood is not the movant and has raised arguments outside the scope of the reply brief filed by Mr. Petit.  As such, the Court will not consider the "Reply Briefs" [71 and 75] filed by Mr. Arrowood, and the Court will also not consider Plaintiff's sur-reply brief addressing Mr. Arrowood's arguments. Plaintiff's Motion to File a Sur-Reply Brief [76] is **DENIED**.

## III.     Defendant Mr. Petit's Motion for Partial Summary Judgment [43]

Mr. Petit moves, pursuant to Rule 56(f), for partial summary judgment on Plaintiff's claim that Mr. Arrowood purchased stock in Matria on October 25, 2007, on the basis of material, non-public information [43].  Mr. Petit argues that he is entitled to summary judgment for two reasons.  First, Mr. Petit argues that as of October 25, 2007, any information about a potential merger was immaterial as a matter of law.  Second, Mr. Petit argues that the circumstantial evidence with respect to the October 25th trade is insufficient to support a reasonable inference that the trade resulted from access to material, non-public

9

information.  The Court will address Mr. Petit's arguments in turn.

A.      Materiality

Turning to the issue of materiality, Mr. Petit argues that any disclosures made to Mr. Arrowood prior to his October 25th trade could not have been material because merger discussions were just beginning.  Mr. Petit argues that mergers are by their very nature precarious and often drawn-out events with a high mortality rate, and thus there was no guarantee that initial discussions would lead to any particular corporate action.  The Court disagrees with Mr. Petit and finds that genuine issues of material fact exist regarding the materiality of any such disclosures.

"Materiality is proved by showing a 'substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the "total mix" of information made available.'" U.S. S.E.C. v. Ginsburg, 362 F.3d 1292, 1302 (11th Cir. 2004) (citing TSC Indus., Inc. v. Northway, Inc., 426 U.S. 438, 449 (1976)). Assessing whether a remote and uncertain future event, like a merger, is material at a given point in time requires "balancing of both the indicated possibility that an event will occur and the anticipated magnitude of the event in

light of the totality of the company activity." <u>SEC v. Ginsburg</u>, 362 F.3d 1292,

1302 (11th Cir. 2004) (quoting <u>Basic v. Levinson</u>, 485 U.S. 224, 246-47

(1988)).  Given that a merger is such a significant event in the life of a

company, the Court finds that inside information regarding exploration of the

possibility of a merger, even if not concrete information about when and with

whom such a merger would occur, could be material even at such an early stage

in merger discussions.  The Court finds that genuine issues of material fact exist

as to whether a reasonable investor would find the information Mr. Petit

allegedly disclosed to Mr. Arrowood to be material, and these factual issues

must be submitted to a jury.

      <u>B.</u>    <u>Circumstantial Evidence</u>

      Second, Mr. Petit argues that undisputed evidence does not support a

reasonable inference that Mr. Petit tipped Mr. Arrowood in October 2007.  As

to Plaintiff's lack of circumstantial evidence, Mr. Petit makes six arguments: (1)

that there is no temporal proximity between Mr. Arrowood's October 25th trade

and any contact with Mr. Petit; (2) that Mr. Arrowood testified and record

evidence establishes that Mr. Arrowood tried to contact Mr. Petit on October

25th but was unsuccessful; (3) that the October 25th trade did not follow any

11

significant event in the life of the exploration of strategic alternatives and did not occur within close temporal proximity to the merger or public announcement; (4) that Mr. Arrowood has provided a legitimate reason for why he purchased the stock on October 25th; (5) that Plaintiff does not allege a pattern of suspicious calls between Mr. Petit and Mr. Arrowood or suspicious calls with or trading by any other person; and (6) that Mr. Petit has not attempted to conceal his relationship with Mr. Arrowood, his previous investment guidance to him, or their contact.

In response, Plaintiff argues that the circumstantial evidence creates a genuine issue of material fact regarding whether Mr. Petit tipped Mr. Arrowood.  Plaintiff points to the following circumstantial evidence regarding the October 25th trade: (1) the close personal relationship between Mr. Petit and Mr. Arrowood; (2) Mr. Petit's history of trading in Mr. Arrowood's account; (3) frequent communications between Mr. Petit and Mr. Arrowood in the fall of 2007; (4) Mr. Petit's possession of information because of his position as CEO of Matria; and (5) possible inconsistencies in the deposition testimony of Mr. Arrowood and of his wife.

12

Courts have repeatedly held that circumstantial evidence, such as communications between tippers and tippees, the relationship between the tipper and the tippee, suspiciously timed trades, implausible explanations for the trading, and/or efforts to cover up the reasons for a trade adequately support an inference of insider trading.  See, e.g., U.S. v. Larrabee, 240 F.3d 18, 21 (1st Cir. 2001); U.S. v. McDermott, 245 F.3d 133, 139 (2d Cir. 2001).  The Court agrees with Plaintiff that there is sufficient circumstantial evidence to create a genuine issue of material fact as to whether Mr. Petit tipped Mr. Arrowood about Matria's decision to shop for a merger.

C.       Conclusion

For the reasons stated above, the Court finds that genuine issues of material fact exist as to both whether any information disclosed was material and whether Mr. Petit actually tipped Mr. Arrowood.  As such, Mr. Petit's Motion for Partial Summary Judgment [43] is **DENIED**.

**IV.     Defendant Mr. Arrowood's Motion in Limine [41]**

Mr. Arrowood has filed a motion to exclude from evidence at trial any mention of an attorney proffer made by his attorney to the Department of Justice on September 2, 2010 [41].  This attorney proffer was scheduled by

Jamila Hall, at that time an Assistant United States Attorney ("AUSA"), who also invited representatives from Plaintiff to attend.  Jamila Hall, John Nemeth (a Staff Accountant employed by Plaintiff), Anthony Cochran (counsel for Mr. Arrowood), and Brian McEvoy (counsel for Mr. Arrowood) attended the proffer meeting.  In that meeting, Mr. Cochran stated that his client would testify that he had been "tipped" before his December trade in Matria stock. Mr. Cochran further stated that his client would not testify that he had "overheard a phone conversation" or otherwise "stumbled upon some information," but would instead say that he was "tipped."  Mr. Arrowood argues that statements made during the proffer meeting are not admissible against him because they are protected by Federal Rule of Evidence 410(a)(4) as statements made during plea discussions.

In response, Plaintiff argues that the proffer meeting was neither a plea discussion nor a compromise negotiation.  Morever, even if the Court were to construe the proffer meeting as a plea discussion, Plaintiff argues that Mr. Arrowood waived the protection of Rule 410(a)(4) because of Plaintiff's standard proffer agreement, which states that the Commission has a right to use any statements made in a proffer if Mr. Arrowood later contradicts them.  The

14

Court notes that Plaintiff alleges that Mr. Arrowood received a copy of

Plaintiff's standard proffer agreement prior to the September 2nd proffer

meeting.

Rule 410(a)(4) states that a court cannot admit "a statement made during

plea discussions with an attorney for the prosecuting authority if the discussions

did not result in a guilty plea or they resulted in a later-withdrawn guilty plea."

To determine whether a discussion should be characterized as a plea

negotiation, the trial court must "determine, first, whether the accused exhibited

an actual subjective expectation to negotiate a plea at the time of the discussion,

and, second, whether the accused's expectation was reasonable given the

totality of the objective circumstances."  United States v. Robertson, 582 F.2d

1356, 1366 (5th Cir. 1978).[2]

As to the first prong, the Court finds that Mr. Arrowood, through his

counsel, exhibited an actual subjective expectation to negotiate a plea at the

time of the discussion.  When asked during his deposition whether he

authorized his attorneys to enter into plea negotiations with the United States

---

[2]     In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en
banc), the Eleventh Circuit adopted as binding precedent all decisions of the former
Fifth Circuit handed down prior to October 1, 1981.

15

Attorney's Office, Mr. Arrowood responded that he did [41-4].  Also, then-AUSA Jamila Hall and Mr. Arrowood's counsel corresponded via e-mail, in which Mr. Arrowood's counsel stated "we would like to take you up on the offer to make an attorney proffer" [41-3, p. 8-9].  As such, the Court finds that it was the expectation of both Mr. Arrowood and his counsel that the discussions would be protected by Rule 410(a)(4).

As to the second prong, the Court finds that Mr. Arrowood's expectation was reasonable given the totality of the circumstances.  Then-AUSA Jamila Hall has signed a declaration that states that it was her understanding that the meeting was an attorney proffer protected by Rule 410(a)(4) [41-2].  Moreover, Ms. Hall stated via e-mail that "one of the purposes of the meeting [was] to see whether Mr. Arrowood could reach a global deal or resolution of the investigation" [41-3, p. 10-11].  As the prosecuting attorney believed that the proffer meeting would be protected by Rule 410(a)(4) and conveyed that belief to Plaintiff's representative who attended the proffer meeting, the Court finds that Mr. Arrowood's expectation was reasonable.

For the reasons stated above, Mr. Arrowood's Motion in Limine [41] is **GRANTED**.

16

**V.      Defendant Mr. Petit's Motion in Limine [42]**

Mr. Petit has moved to suppress the statements made by Mr. Arrowood's counsel during his attorney proffer [42].  However, the Court finds that Mr. Petit is not protected by Rule 410 because neither he nor his counsel was present at the attorney proffer.  Rule 410 protects only the person who has participated in the plea discussions.  The Court recognizes that there may be a hearsay problem with respect to these statements if Mr. Arrowood is unwilling or unable to testify at trial.  However, the Court will address any such hearsay issues at trial.

As to Plaintiff's contention that a limiting instruction would be sufficient to avoid any purported prejudice at trial, these statements would be significantly prejudicial to both Mr. Arrowood and Mr. Petit.  Therefore, the Court would be willing to consider arguments regarding severance to protect both Defendants because a limiting instruction would likely be insufficient.  See Bruton v. United States, 391 U.S. 123 (1968).

For the reasons stated above, Mr. Petit's Motion in Limine [42] is **DENIED**.

17

## Conclusion

For the reasons stated above:

(1)     Plaintiff's Motion to File a Sur-Reply Brief [76] is **DENIED**;

(2)     Defendants' Motion for Partial Summary Judgment [43] is

**DENIED**.  The parties are ORDERED to submit a consolidated

proposed pretrial order within thirty days of the docketing of this

order;

(3)     Mr. Arrowood's Motion in Limine [41] is **GRANTED**; and

(4)     Mr. Petit's Motion in Limine [42] is **DENIED**.

**SO ORDERED**, this   7th   day of August, 2013.


_____
RICHARD W. STORY
UNITED STATES DISTRICT JUDGE

18