# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | CIVIL ACTION FILE NO. 1:12-cv-00082-RWS |
| EARL C. ARROWOOD and PARKER H. PETIT, | ) ) ) | |
| Defendants. | ) | |

## PARKER H. PETIT'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION TO EXCLUDE EVIDENCE REGARDING THE POLYGRAPH EXAMINATION UNDERTAKEN BY MR. PETIT

When it comes to Mr. Cochran's alleged "attorney proffer" or Mr. Arrowood's abandoned Fifth Amendment invocation, the Securities and Exchange Commission (the "SEC" or the "Commission") very much wants its pre-suit investigation to be in focus at trial. There are other aspects of that investigation, however, that the Commission would prefer to obscure from view. In particular, the SEC wants the Court to ignore the exculpatory results of Mr. Petit's polygraph examination, which was administered by an expert that the Commission has itself relied upon previously. Thus, it filed

6440362v2

the instant Motion in Limine to exclude such evidence from trial. The problems with its request are several.

First, the SEC's motion is (severely) untimely. Local Rule 26.2B makes plain that objections to expert testimony based on *Daubert v. Merrell Dow Pharmaceuticals, Inc.* 509 U.S. 579 (1993), must be filed "no later than the date that the proposed pretrial order is submitted" or, absent "justification," are waived. LR 26.2B, NDGa. Here, the SEC's motion comes far too late. And it has offered no justification for its delay. Respectfully, that defect alone should result in the denial of its motion.

Second, the SEC's request to exclude what it describes as the results of an "ex parte" and "secret" polygraph examination—which it contends "unfairly hinder[ ] [its] ability to cross-examine the polygrapher and have the results reviewed by its own expert"—ignores the realities of this case. (*See* Br. in Supp. of Pl.'s Mot. to Exclude Polygraph [Dkt. 112-1] at 8.) After all, the polygraph examiner who administered Mr. Petit's examination, Paul Minor ("Mr. Minor"), has a history of being retained *by the SEC*. And, four years ago (and eighteen months before the SEC filed suit), Mr. Petit gave the Commission carte blanche authority to

communicate with Mr. Minor about his examination and further agreed to the SEC's request to sit for a *second* examination by an SEC-selected polygraph examiner and to answer whatever questions the Commission deemed appropriate. The SEC can hardly heap criticism upon an examiner whose expertise it relied upon in another matter. And it should not be heard to claim "prejudice" after being given an invitation to speak with Mr. Minor about his examination and then choosing not to avail itself of the opportunity.

Third, the SEC's insistence that the Court should not permit testimony regarding the examination under the Eleventh Circuit's decision in *United States v. Piccinonna*, 885 F.2d 1529 (11th Cir. 1989) (en banc), on grounds that the results might "confuse" the jury is inapt. Mr. Petit is coming before the Court for a bench trial, not a jury trial. The Court is well equipped to give the polygraph results—along with Mr. Petit's agreement to have those results examined and corroborated by the SEC—appropriate weight after hearing all of the evidence in the case.

Accordingly, Mr. Petit respectfully requests that the SEC's motion be denied.

## FACTUAL BACKGROUND

More than four years ago, Mr. Petit informed the SEC that he had taken and resoundingly passed a polygraph examination performed by Mr. Minor. As the Commission knows from experience, Mr. Minor's credentials are impeccable. He was previously employed with the Chief Polygraph Office for the United States Army's Criminal Investigation Command. Then, for nine years, Mr. Minor was the Chief Polygraph Examiner and Polygraph Program Coordinator for the Federal Bureau of Investigation ("FBI"), charged with overseeing and monitoring approximately fifty Special Agent Polygraph Examiners throughout the country.  (*See* Curriculum Vitae of Mr. Minor, attached as Exhibit A.) He is a member of the American Polygraph Association, the Virginia Polygraph Association, the Maryland Polygraph Association, the American Association of Police Polygraphers, and the Virginia Governor's Polygraph Advisory Board. (*Id.*)

Based on those credentials, the SEC itself retained Mr. Minor in the context of at least one prior investigation into alleged insider trading. Indeed, in Chicago, the SEC selected Mr. Minor to administer a second

polygraph examination to a putative defendant after expressing disapproval with the examiner the defendant had hired. (*See* Letter from A. Danzig to J. Nemeth, June 2, 2010, attached as Exhibit B.) Hoping that the SEC would at least credit the examination results of its own prior expert, Mr. Petit's counsel went to Mr. Minor from the outset. (*See id.*)

The questions that were posed to Mr. Petit during his examination, moreover, were designed to meet the entirety of the accusations levied against him by the SEC. And, to assuage any concerns on the part of the Commission, the questions he answered ranged from the very general to the specific:

- Did you provide any confidential information about Matria to Earl Arrowood at any time in 2007?

- Before December 27, 2007, did you tell Earl Arrowood that Matria might be sold?

- Did you provide any information to Earl Arrowood to encourage him to buy Matria stock before his October 2007 purchase?

- Did you provide any information to Earl Arrowood to encourage him to buy Matria stock before his December 2007 purchase?

- In December 2007, did you tell Earl Arrowood to buy Matria stock?

(Expert Report of Paul Minor, attached as Exhibit C.) Mr. Petit answered "no" to each question. And for each response, Mr. Minor, applying his expertise, detected "no deception" on the part of Mr. Petit.

In the face of these favorable test results, the SEC asked for permission to talk directly with Mr. Minor regarding his administration of the polygraph to Mr. Petit. Mr. Petit agreed. (*See* Exhibit B.) The SEC also asked if Mr. Petit would agree to submit to a second polygraph examination by a polygraph examiner of its choosing and using questions it crafted. Again, Mr. Petit agreed, with a single condition: namely, that if he took and passed the second polygraph administered under the SEC's direction, the SEC would agree to drop its baseless allegations against him. (*See id.*)

Curiously, the SEC never countered or otherwise responded to Mr. Petit's proposal. It also never took Mr. Petit up on the invitation to speak with Mr. Minor. And the Commission never attempted to schedule its own polygraph examination. Instead, it continued its investigation—with Mr. Petit's full cooperation—for another year and a half before finally filing

this enforcement proceeding, causing the defense to incur hundreds of thousands of dollars in legal fees in the process.

Once litigation began, moreover, Mr. Petit identified Mr. Minor as an expert witness on several occasions, including (i) at the preliminary scheduling conference held in Chambers on April 9, 2012; (ii) in response to the SEC's Interrogatory No. 8, which asked him to "[i]dentify all persons you have retained to testify in this matter and the substance of their testimony" (*see* Mr. Petit's Interrogatory Responses, attached as Exhibit D); and (iii) in the Pretrial Order, which was filed with the Court on October 30, 2013 [Dkt. No. 85]. The SEC never objected to these designations. It never complained that Mr. Petit's disclosures were somehow inadequate.[1] And it never attempted to depose or speak with Mr. Minor. Instead, the SEC has waited until now—exactly one month in

---

[1]     Although the SEC now voices general criticisms regarding the detail provided in Mr. Minor's expert report and *curriculum vitae*, it has had years to raise the issue or seek additional information from Mr. Minor. (*See* Br. in Supp. of Pl.'s Mot. to Exclude Polygraph [Dkt. 112-1] at 6-7.) It did not. Its amorphous complaint that Mr. Minor should have provided more information about his examination and methodology could easily have been addressed in discovery, correspondence between the parties, or through a dialogue with Mr. Minor (to which Mr. Petit had expressly agreed). Simply put, the Commission's tardy objection to the detail provided in Mr. Minor's report should pose no obstacle to his testimony in this case.

advance of trial—to object to Mr. Minor's testimony. The objection is unfounded and comes far too late.

ARGUMENT AND CITATION TO AUTHORITY

## I.    The SEC Has Waived Its Objection to Mr. Minor's Testimony.

The first failing with the SEC's motion is the most fundamental. Predicated as it is upon *Daubert*, the motion is untimely.

The rules of this Court are clear. Any *Daubert* objection to expert testimony must be made "*no later than the date that the proposed pretrial order is submitted. Otherwise, such objections will be waived,* unless expressly authorized by court order based upon a showing that the failure to comply was justified." LR 26.2B, NDGa. (emphasis added).

Here, the parties submitted an exhaustive proposed Pretrial Order on October 30, 2013 [Dkt. No. 85], following two consensual and joint extensions of time [Dkt. Nos. 78 & 81]. The SEC's motion comes more than *six months* after that filing. And it has offered no "justification" for its delay. There is none. Indeed, the SEC has known about Mr. Minor, his credentials, the examination, and his report for more than *four years* without a word of objection. Under the local rules and the prior decisions

of this Court, the consequences of its tardy filing are plain: any *Daubert*-based challenge has been waived.

For example, in *Webster v. Fulton County*, 85 F. Supp. 2d 1375, 1377 (N.D. Ga. 2000), Judge Thrash reiterated that *Daubert* challenges must be filed in a timely fashion and held that timely meant "within a reasonable time after the close of discovery if the grounds for the objection can be reasonably anticipated." *Id.* At a minimum, the *Daubert* motion "should be made well in advance of the first time a case appears on a trial calendar." *Id.* Because the defendant's *Daubert* motion in that case came just a month and a half before the case was calendared for trial, the Court rejected it as untimely.

The same result should obtain here. Again, the SEC has known about Mr. Minor's report, which has not changed, since May 2010. Mr. Petit repeatedly identified Mr. Minor as an expert witness during the course of this litigation. Yet, the SEC did not file its objection within a reasonable time after the close of discovery, nor did it file its *Daubert* challenge before the case first appeared on the March 24, 2014 trial calendar. Rather, the SEC waited another two months to file its motion, just weeks before the

June 16, 2014 trial. By doing so, it waived any objection it might have had to the report's admissibility under *Daubert. See Denton v. Daimlerchrysler Corp.*, 645 F. Supp. 2d 1215, 1223 (N.D. Ga. 2009) (Story, J.) (holding that defendant waived objection to expert testimony by failing to file a timely *Daubert* motion under Local Rule 26.2(C) and also where defendant failed to object to testimony at trial); *Reynolds v. GMC*, No. 2:04-cv-106-RWS, 2008 U.S. Dist. LEXIS 77618, at *4 & n.1 (N.D. Ga. Oct. 1, 2008) (Story, J.) (holding that defendant failed to raise a timely *Daubert* challenge to plaintiff's expert testimony under Local Rule 26.2(C) and that defendant's challenges went to the weight rather than the admissibility of the evidence); *see also Bolton v. WJV Miss., Inc.*, No. 08-0310-WS-M, 2011 U.S. Dist. LEXIS 11892, at *12-15 (S.D. Ala. Feb. 7, 2011) (denying *Daubert* motion filed 21 days after the Court-imposed deadline where defendant had been on notice of proposed expert testimony for almost two years).

Moreover, Mr. Petit would be prejudiced if the SEC were permitted to raise its objections now. Understandably, Mr. Petit's counsel are diligently preparing for trial, which will involve hundreds of exhibits and numerous witnesses. Practically speaking, defending against *Daubert*

challenges can be Herculean, involving significant briefing and a *Daubert* hearing requiring the testimony of Mr. Minor, who lives out of state. *See United States v. Posado*, 57 F.3d 428, 434 (5th Cir. 1995) (holding that polygraph examination results cannot be subject to *per se* prohibition, but instead, that admissibility must be resolved under *Daubert* framework). The rule imposing deadlines for *Daubert* challenges is designed to allow objections to expert testimony to be taken up sufficiently in advance of trial so as not to interfere with the preparation that must be done by the Court and the parties to actually try the case. But, the SEC's motion—if entertained despite its delinquency—would have the unfortunate result of working just such an interference here.

Simply put, because the SEC failed to object to Mr. Minor's testimony within the time required by the local rules—or even within a reasonable time after that deadline—the SEC has waived its *Daubert* objection to Mr. Minor's testimony. Accordingly, the SEC's motion should be denied, Mr. Minor should be permitted to testify at Mr. Petit's trial, and the results of Mr. Petit's polygraph examination—along with Mr. Petit's

agreement to have those results examined and corroborated by the SEC—should be admitted into evidence.

## II.   Polygraph Testing and Evidence is Recognized in the Eleventh Circuit.

Untimely objections aside, the results of Mr. Petit's favorable polygraph examination should be admitted under the Eleventh Circuit's decision in *United States v. Piccinonna*, 885 F.2d 1529 (11th Cir. 1989). There, the Eleventh Circuit made clear that no *per se* rule exists against the introduction polygraph evidence. Recognizing the "tremendous advances [that] have been made in polygraph instrumentation and technique" (even twenty-five years ago), the Eleventh Circuit rejected the notion that polygraph evidence was somehow verboten, and instead set out specific rules to govern its admissibility. *Id.* at 1532.

Pursuant to *Piccinonna*, polygraph evidence can be used, *inter alia*, "to impeach or corroborate the testimony of a witness at trial." *United States v. Loaiza-Clavijo*, No. 1:08-cr-356-18, 2012 U.S. Dist. LEXIS 20685, *8 (N.D. Ga. Feb. 17, 2012) (*quoting Piccinonna*, 885 F.2d at 1535-36). Use of such testimony as corroboration requires that the party seeking admission follow the dictates of Federal Rule of Evidence 608 and satisfy

three conditions. *Piccinonna*, 885 F.2d at 1536; *see United States v. Ramos*, 933 F.2d 968, 976 (11th Cir. 1991). First, the party seeking to introduce the evidence must provide adequate notice to the opposing party. *Piccinonna*, 885 F.2d at 1536. Second, the opposing party must be provided a reasonable opportunity to have its own polygraph expert administer a test covering substantially the same questions. *Id.* And third, the polygraph evidence must satisfy the admissibility requirements of the Federal Rules of Evidence. *Id.*

Here, the first two conditions are indisputably satisfied. The SEC has known of this evidence since May 5, 2010, and has known that Mr. Petit intended to offer it into evidence since at least April 2012. Furthermore, the SEC has had more than a reasonable opportunity to have its own polygraph expert administer a test covering substantially the same questions. Indeed, the SEC specifically requested that opportunity before initiating suit, but never followed through with its request after litigation began. Since that time, moreover, the SEC has not even attempted to administer its own, second polygraph to Mr. Petit. It did not lack that opportunity. It simply chose not to pursue it.

Finally, and as explained below, the polygraph evidence sought to be admitted here satisfies the most common evidentiary obstacles to admissibility: Federal Rule of Evidence 702, which codifies the test for admissibility commonly referred to as the *Daubert* standard, and Federal Rule of Evidence 403, which allows courts to exclude relevant evidence whose probative value is substantially outweighed by the danger of, *inter alia*, unfair prejudice or misleading the jury.

## A.    The Polygraph Evidence Meets the Requirements of Rule 702.

Pursuant to Rule 702, Federal Rules of Evidence, expert testimony may be used to help the trier of fact understand the evidence or determine a fact in dispute. In *Daubert*, the United States Supreme Court set out a multi-factored inquiry for determining whether expert testimony is sufficiently reliable to be admitted under the Rule:

(1) Whether the theory or technique can be and has been tested;

(2) Whether the theory or technique has been subjected to peer review and publication;

(3) The known or potential rate of error for that theory or technique;

(4) The existence and maintenance of standards controlling the theory or technique's operation; and

(5) Whether the theory or technique has attained general acceptance within the relevant scientific community.

*United States v. Henderson*, 409 F.3d 1293, 1302 (11th Cir. 2005) (*citing Daubert*, 509 U.S. at 593-94 and *United States v. Gilliard*, 133 F.3d 809, 812 (11th Cir. 1998)).

Of course, Mr. Petit acknowledges that polygraph testing has a controversial past. Even if the SEC had filed a timely *Daubert* motion, however, that past would not erect an absolute prohibition against the admissibility of polygraph testimony under the foregoing framework. Indeed, several trial courts in this Circuit have permitted the introduction of polygraph evidence.

In *Richardson v. Dougherty County*, 2005 U.S. Dist. LEXIS 47583, *4-5 (M.D. Ga. Oct. 18, 2005), for example, the district court denied plaintiff's motion to strike affidavits containing polygraph results. And in *United States v. Souffrant*, 517 Fed. Appx. 803, 814-816 (11th Cir. 2013), the trial court admitted evidence of the defendant's failed polygraph exam. Though the Eleventh Circuit ultimately held that the admission of the

evidence was harmless error, it cited only the "notice and opportunity" prerequisites set out in *Piccononna*—prerequisites that are undeniably satisfied here—not any concerns about the polygraph test's admissibility as a general matter under the Federal Rules of Evidence. *See id.* at 815-16.

Here, Mr. Minor's polygraph results *do* pass muster under the Federal Rules. Although the SEC's failure to make a timely *Daubert* motion makes such an exercise unnecessary here, taking the polygraph testimony and putting it through the aforementioned framework allows its introduction in this case:

### 1. Polygraphy has been extensively tested and the subject of peer review and publication.

As to the first two prongs of the *Daubert* standard, there is no longer room for debate: polygraphy theory can be and has been tested and has been the subject of peer review and publication. Indeed, numerous studies and articles show that polygraphy is a well-established science. *See, e.g.*, *United States v. Cordoba*, 991 F. Supp. 1199, 1202 (C.D. Cal. 1998) (recognizing that "the premise underlying polygraph has been tested **extensively** in both laboratory and field settings") (emphasis supplied); *see also* ELISABETH A. WILSON, Comment, *Polygraph in Trade Secret*

*Litigation: Overcoming Misconceptions and Paving the Way for Admissibility*, 10 COMP. L. REV. & TECH. J. 357, 376 (2006) (noting that "courts usually concede that polygraph is capable of being tested").

As the Eleventh Circuit recognizes, polygraph theory has also been subjected to exhaustive peer review. *See Piccinonna*, 885 F.2d at 1533 (noting the "wake of new empirical evidence and scholarly opinion which have undercut many of the traditional arguments against admission of polygraph"); *see also Posado*, 57 F.3d at 434 (recognizing that "polygraph technique has been and continues to be subjected to extensive study and publication");[2] *United States v. Crumby*, 895 F. Supp. 1354, 1359 (D. Ariz. 1995) (recognizing that "[t]here have been numerous scholarly articles published concerning the validity and reliability of polygraph evidence" and finding that "the science of polygraphy and its underlying scientific principles have been subjected to extensive peer review and publication"); *Lee v. Martinez*, 96 P.3d 291, 300 (N.M. 2004) (holding that "[t]he fact that an ongoing debate [about the validity and accuracy of polygraph evidence]

---

[2] Notably, the Fifth Circuit's decision in *United States v. Posado*, which held that the *per se* prohibition against the admitting polygraph evidence failed under *Daubert*, involved the expert polygraph testimony of Mr. Minor.

exists is all that is required for [the peer review] factor to be deemed satisfied").

### 2. Polygraph testing has a known or potential rate of error.

Next, polygraph testing and methodology is becoming increasingly standardized. As the *Posado* Court noted, "current research indicates that, when given under controlled conditions, the polygraph technique accurately predicts truth or deception between *seventy and ninety percent* of the time." *Posado*, 57 F.3d at 434 (emphasis supplied). While not infallible, *Daubert* does not require scientific infallibility. Rather, the known or potential rate of error should go to the weight, not the admissibility, of the evidence at issue.

### 3. Standards controlling polygraph theory's operation exist and are maintained.

Additionally, the polygraphy field is replete with standards and regulations.   The leading professional polygraphy organization, the American Polygraph Association, publishes a number of standards to govern polygraph testing, which are followed by its more than 2,800 member polygraph examiners. Mr. Minor is a member of that professional

organization. Moreover, Mr. Minor himself established and set standards for all polygraph examiners when he headed the FBI's Polygraph Office. And, as of 2007, at least 27 states require licenses or other regulation of polygraphists. *See* American Polygraph Association, STATE LICENSING BOARDS, http://www.polygraph.org/section/state-licensing-boards-0 (last visited March 14, 2014).

### 4. Polygraphy has gained general acceptance within the relevant scientific community.

As techniques and standards have improved, moreover, polygraphy has gained general acceptance within the relevant scientific community.

Indeed, the fact that polygraph evidence is used by both state and federal governments in a wide range of settings indicates its general acceptance. *See, e.g., Lewis v. Ga. Dep't of Pub. Safety*, No. 1:11-cv-0180, 2014 U.S. Dist. LEXIS 11396, at *12-16, 18-20, 27-29 (M.D. Ga. Jan. 30, 2014) (affirming grant of summary judgment in favor of the Georgia Department of Public Safety in a discrimination case in which the former employee was terminated after failing a polygraph examination). In addition to the widespread use of polygraph testimony, numerous studies

evidence its general acceptance. *See, e.g.*, MICHAEL J. LIGONS, *Polygraph Evidence: Where Are We Now?*, 65 MO. L. REV. 209 (2000).

It hardly seems fair to allow a state employee to be fired after a failed polygraph test, but to disallow a civil defendant from using polygraph testing to corroborate his testimony. And that is particularly true here.

The SEC's case, after all, is built on the weakest of circumstantial evidence. The best evidence Mr. Petit can identify to demonstrate a negative—that is, the *absence* of an improper "tip" of inside information— is his firm, unwavering, and uncontradicted denial. Mr. Petit should be permitted to corroborate that denial by admitting into evidence the fact that he took and passed a polygraph examination administered by one of the preeminent polygraph examiners in the field and whose credentials and expertise have been satisfactory to the SEC in the past. Moreover, Mr. Petit's willingness to sit for a second polygraph—at the SEC's requests and conducted entirely by the SEC—should further corroborate Mr. Petit's testimony that he did not, in any respect, "tip" Mr. Arrowood.

Furthermore, there could scarcely be a more appropriate factual backdrop for the admission of polygraph testimony than the one presently before the Court. Here, the polygraph examiner selected by Mr. Petit, Mr. Minor, has served as the SEC's polygrapher of choice in at least one prior insider trading investigation. *It* has relied on his expertise in conducting the business of the Commission. And, when confronted with evidence of Mr. Petit's examination here, the SEC did not thumb its nose at the science or reject polygraphy out of hand. Rather, it asked for the opportunity to speak with Mr. Minor and requested that Mr. Petit sit for *another* polygraph examination. Its invitation could mean only one of two things: Either (i) it credited the results of polygraph examinations and, thus, genuinely wanted to consider the results of a second examination, or (ii) it hoped that a second examination would produce impeachment evidence to use against Mr. Petit at trial. But even in the latter circumstance, the SEC must have entertained the notion that such evidence would be admissible in future judicial proceedings as impeachment testimony. And under either scenario—one in which the SEC credits polygraph results, or one in which it hopes to use those results against the witness at trial—the SEC should

not be heard now (and delinquently) to insist upon such evidence's exclusion.

In sum, the evidence Mr. Petit seeks to use bears strong indicia of reliability—his expert examiner, Mr. Minor, is a well-respected and experienced polygraph examiner. He has been conducting and perfecting the administration of the polygraph for more than forty years, and before starting his own firm, he was the top polygraph examiner with the FBI. He has provided expert polygraph testimony in more than a dozen cases and has testified before the United States Senate Ethics and Judiciary Committees. *See* Ex. A; *Rupe v. Wood*, 863 F. Supp. 1315, 1327 (W.D. Wash. 1994) (noting that Mr. Minor is an expert in polygraph examinations, finding him to be "a highly qualified and credible witness," and affording his testimony "great weight"). His tests and methodologies are reliable and accepted, and should, at a minimum, be admitted to corroborate Mr. Petit's testimony.

### B.    Admitting Polygraph Evidence in this Case will not Violate Rule 403.

Furthermore, admission of polygraph evidence here will not implicate any concerns raised by Federal Rule of Evidence 403. That Rule

allows courts to exclude relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice or other problems. Even if a concern enumerated in Rule 403 is present, however, the Court need not exclude the evidence. "The remedy for the opponent of polygraph evidence is not exclusion; the remedy is cross-examination, presentation of rebuttal evidence, and argumentation." *Lee v. Martinez*, 96 P.3d 291, 306 (N.M. 2004). Moreover, since the fact finder here is the Court, and not the jury, there is no risk of substantial prejudice, as the Court is entirely capable of determining the proper weight to be afforded to Mr. Petit's favorable polygraph examination in light of all of the evidence presented.

## CONCLUSION

For all of the reasons stated herein, Mr. Petit respectfully requests that the SEC's Motion in Limine be denied.

*[ Signature of Counsel Appears on the Following Page ]*

6440362v2

Respectfully submitted this 23d day of May, 2014.

ARNALL GOLDEN GREGORY LLP

/s/ Aaron M. Danzig
Aaron M. Danzig
Georgia State Bar No. 205151
Aaron.Danzig@agg.com
Jennifer L. Shelfer
Georgia State Bar No. 557213
Jennifer.Shelfer@agg.com
171 17th Street, N.W.; Suite 2100
Atlanta, Georgia  30363
(404) 873-8504 (direct dial)
(404) 873-8605 (facsimile)

Attorneys for Defendant

## CERTIFICATE OF COMPLIANCE

This is to certify that the foregoing was prepared using Times New Roman 14 point font in accordance with Local Rule 5.1(B).

This the 23d day of May, 2014.

ARNALL GOLDEN GREGORY LLP

/s/ Aaron M. Danzig
Aaron Danzig
Georgia State Bar No. 205151

## CERTIFICATE OF SERVICE

The attorney whose name appears below certifies that he has this day served Plaintiff with this **PARKER H. PETIT'S RESPONSE IN OPPOSITION TO THE SEC'S MOTION TO EXCLUDE EVIDENCE REGARDING THE POLYGRAPH EXAMINATION UNDERTAKEN BY MR. PETIT** by filing with the Clerk of Court using the CM/ECF system, which will automatically send email notification of such filing to:

Joshua Mayes (mayesj@sec.gov)
Robert Schroeder (schroderr@sec.gov)
Securities and Exchange Commission
950 East Paces Ferry Road, N.E.
Suite 900
Atlanta, Georgia 30326-1382

Anthony Cochran (alc@cclblaw.com)
Chivilis Cochran Larkins & Bever LLP
3127 Maple Drive, N.E.
Atlanta, Georgia 30305

This the 23d day of May, 2014.

ARNALL GOLDEN GREGORY LLP

/s/ Aaron M. Danzig
Aaron M. Danzig
Georgia State Bar No. 205151